# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-15-00823-CR

**Louis Anthony Ramos, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
## NO. CR-15-0603, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Louis Anthony Ramos guilty of one count of murder, *see* Tex. Penal Code § 19.02(b), and two counts of aggravated assault with a deadly weapon, *see id.* § 22.02(a)(2). The jury assessed punishment at 35 years' imprisonment for the murder count, 15 years' imprisonment for the first aggravated-assault count, and 10 years' imprisonment for the second aggravated-assault count, and the trial court ordered all the sentences to run concurrently. In one issue challenging his murder conviction, Ramos contends that the State failed to meet its burden to prove beyond a reasonable doubt that he did not act in self-defense.[1]  We will modify the

_____

[1] Ramos also appealed his convictions for the two counts of aggravated assault. However, Ramos's court-appointed attorney has filed a motion to withdraw with respect to those two counts supported by a brief concluding that the appeal of the aggravated-assault judgments is frivolous and without merit. The brief meets the requirements of *Anders v. California* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Garner v. State*, 300 S.W.3d 763, 766 (Tex. Crim. App. 2009); *see also Penson v. Ohio*, 488 U.S. 75, 86–87 (1988).

trial court's judgment of conviction for murder to correct a clerical error, affirm the murder judgment as modified, and affirm the trial court's remaining judgments of conviction.

## BACKGROUND[2]

Ramos shot and killed Johnny Saxon. When Johnny's daughter H.S.[3] and mother Anita[4] attempted to call 911, Ramos pointed a gun at them and instructed them not to call for help. Ramos then fled but later turned himself in to police. Ramos was convicted of one count of murder for Johnny's death and two counts of aggravated assault with a deadly weapon for threatening H.S. and Anita with a gun. The jury assessed Ramos's punishment, the trial court rendered judgment consistent with the jury's verdicts, and this appeal followed.

---

Ramos's counsel has represented to the Court that he has provided copies of the motion and the brief to Ramos; advised Ramos of his right to examine the appellate record and file a pro se brief; and provided Ramos with a form motion for pro se access to the appellate record along with the mailing address of this Court. *See Kelly v. State*, 436 S.W.3d 313, 319–21 (Tex. Crim. App. 2014); *see also Anders*, 386 U.S. at 744; *Garner*, 300 S.W.3d at 766. We received a pro se brief from Ramos.

We have conducted an independent review of the record, including appellate counsel's brief and Ramos's pro se brief, and find no reversible error with respect to the aggravated-assault counts. *See Anders*, 386 U.S. at 744; *Garner*, 300 S.W.3d at 766; *Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005). We agree with counsel that the record presents no arguably meritorious grounds for review and the appeal of the aggravated-assault counts is frivolous.

Counsel's motion to withdraw with respect to the two aggravated-assault counts is granted. The judgments of conviction for aggravated assault with a deadly weapon are affirmed.

[2] The facts recited in this opinion are taken from the testimony and other evidence presented at trial.

[3] We refer to Johnny's daughter by her initials because she is a minor.

[4] Because Johnny and Anita share the same last name, we refer to them by their first names.

2

**DISCUSSION**

The trial court submitted a self-defense instruction to the jury. In his sole issue, Ramos contends that the evidence is insufficient to support the jury's determination that he was not acting in self-defense when he shot and killed Johnny.

In evaluating the sufficiency of the evidence supporting a jury's verdict, we view the evidence in the light most favorable to the verdict and ask whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (quoting *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010)). We are instructed only to "ensure that the evidence presented supports the jury's verdict and that the state has presented a legally sufficient case of the offense charged." *Id.* "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses," and if "the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

A person is justified in using force against another when and to the degree he reasonably believes is immediately necessary to protect himself against the other's use or attempted use of unlawful force. Tex. Penal Code § 9.31(a). "[T]he issue of self-defense is an issue of fact to be determined by the jury." *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). When a defendant raises the issue of self-defense, "the State has the burden of *persuasion* in disproving the evidence of self-defense," but it is not required to "affirmatively produce evidence refuting the self-defense claim, but rather . . . to prove its case beyond a reasonable doubt." *Id.* In evaluating the

3

sufficiency of the evidence supporting a jury's rejection of a claim of self-defense,[5] we ask not whether the evidence refuted the self-defense testimony but whether, viewing the evidence in the light most favorable to the prosecution, a rational juror could have found against the claim of self-defense beyond a reasonable doubt. *Id.* at 914. Evidence supporting a claim of self-defense "will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Id.*

Here, the State presented evidence that Ramos and his wife got into an argument at a community pool earlier on the day of the shooting. Ramos hit his wife in the head and then left. Johnny picked up Ramos's wife and several children and drove them to Anita's residence, where Johnny and his children lived.

Ramos later came to the Saxon residence claiming that he had been shot in the leg. Johnny's friend Rick Clark got into an argument with Ramos, struck Ramos with a rod, and jabbed the rod into Ramos's alleged gunshot wound.[6] Ramos and Clark fought, and Clark knocked Ramos onto the ground. Clark and Johnny told Ramos to leave. Ramos left. At some point, Johnny went into the Saxon residence and came out with a shotgun that was missing pieces and was inoperative. Witnesses at trial disagreed on whether Johnny got the inoperative shotgun before or after Ramos left.

A short time later, Ramos returned with a gun and asked where Clark was. While looking for Clark, Ramos turned a corner and saw Johnny holding the inoperative shotgun. Ramos

---

[5] A jury implicitly rejects a claim of self defense when it returns a guilty verdict. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

[6] When Ramos later turned himself in to police, he did in fact have a gunshot wound in his leg.

shot Johnny in the chest, perforating his aorta and killing him almost instantly. After shooting Johnny, Ramos appeared to be in a state of shock. When H.S. called 911, Ramos pointed his gun at her and told her to hang up. She did, and Ramos then told her to call 911 back and tell them that her first call was an accident. H.S. complied. Ramos also pointed his gun at Anita and told her that he would kill her if she called 911. Ramos began crying, said that he was sorry, and hugged H.S. Then he left.

From this evidence, a reasonable fact-finder could have found beyond a reasonable doubt that the State had proved each element of the offense of murder. That is, the jury could have found that Ramos intentionally or knowingly killed Johnny or that Ramos intended to cause serious bodily injury, committed an act clearly dangerous to human life, and caused Johnny's death. Moreover, the jury could have found beyond a reasonable doubt that Ramos was not acting in self-defense. Although Ramos saw Johnny holding an inoperative gun, there was no evidence presented at trial that Johnny pointed the gun at Ramos or threatened Ramos in any way after Ramos returned to the property. Accordingly, there was no evidence that Ramos reasonably believed that force was "immediately necessary" to protect himself. *See* Tex. Penal Code § 9.31(a). Furthermore, Johnny was at his mother's home where he and his family also lived and was only holding the gun because of Ramos's earlier altercation with Clark and his initial refusal to leave the property. Therefore, when Ramos returned to the property armed and without permission, Johnny would have been justified in threatening Ramos with lethal force if he did not leave. *See id.*; *see also id.* §§ 9.33 (Defense of Third Person), 9.41(a) (Protection of One's Own Property). Because Johnny had a right to protect himself and his family, the jury could have reasonably concluded that Ramos was not entitled to use force against Johnny. *See id.* § 9.31(a) (explaining that self-defense may be justified

5

to protect against "unlawful force"); *see also id.* § 9.31(b)(4) ("The use of force against another is not justified . . . if the actor provoked the other's use or attempted use of unlawful force . . . .").

Because we have concluded that the State presented sufficient evidence to support the jury's verdict, we overrule Ramos's sole issue.

However, our own review of the record has revealed a non-reversible clerical error in the judgment of conviction for murder. The judgment lists the statute for the offense as "19.02(b)(1) Penal Code." The record indicates, however, that the trial court submitted instructions to the jury regarding both section 19.02(b)(1) and section 19.02(b)(2), and the jury's verdict does not indicate under which subsection it found Ramos guilty. Accordingly, we modify the judgment in Count I to list the statute for the offense as "19.02(b) Penal Code."

## CONCLUSION

We affirm the judgment of conviction for Count I as modified and affirm the judgments of conviction for Count II and Count III.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Count I: Modified and, as Modified, Affirmed

Count II: Affirmed

Count III: Affirmed

Filed: March 1, 2017

Do Not Publish

6